Filed 5/19/25  P. v. Green CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TOYRION GREEN,<br><br>    Defendant and Appellant. | B332653<br><br>(Los Angeles County Super. Ct. No. TA131223) |

APPEAL from an order of the Superior Court of Los Angeles County, Allen J. Webster Jr., Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Toyrion Green (defendant) of four counts of attempted murder and two other offenses. Years later, he filed a Penal Code section 1172.6 (former Penal Code section 1170.95) petition seeking resentencing on the attempted murder convictions.[1] The trial court found defendant had not made a prima facie case for relief and denied the petition. We are asked to decide whether this was error even though it is undisputed defendant's trial jury was not instructed on the natural and probable consequences doctrine.

## I. BACKGROUND

### A. *The Offense Conduct and Trial*

Defendant was a member of the Carver Park Crips gang. On the evening of August 28, 2013, Jonisha Baker (Baker), Jasmine Ellis (Ellis), and three others were "hanging out" in front of a house in Compton. Baker and Ellis overheard a woman who was not with them say, regarding the Carver Park Crips gang, "fuck their hood" and "they dead homies." Defendant, who was also on the street at the time, heard the comments. He moved to cross in their direction, but he was stopped by someone.

A short time later, a car pulled up beside Baker, Ellis, and their companions, and defendant jumped out of the passenger seat. He asked which of them "dissed [his] hood," and they all denied doing so. Defendant said, "Yeah. All right. I am going to shoot this motherfucker up." He got back into the car, and it drove away.

---

[1] Undesignated statutory references that follow are to the Penal Code.

2

Baker then left in her car, but she returned ten to twenty minutes later. She, Ellis, and the others resumed socializing around Baker's car. Not long thereafter, a car pulled up, defendant got out, and he fired multiple gunshots in the group's direction—one of which hit Baker's car.

Defendant was apprehended thereafter and went to trial on charges of assault with a firearm, shooting at an occupied motor vehicle, criminal threats, and five counts of attempted murder (one each for Baker, Ellis, and their three companions). Among the instructions delivered to the jury at defendant's trial were instructions on attempted murder and on the kill zone theory. The jury was not instructed on the natural and probable consequences doctrine.

The jury acquitted defendant of one count of attempted murder, but it found him guilty of the remaining four counts (with the further finding that the attempted murders were premeditated). The jury also found defendant guilty of making criminal threats and shooting at an occupied motor vehicle. The jury found true allegations that defendant personally discharged a firearm during the commission of the attempted murders. The trial court sentenced defendant to 39 years to life in prison. A prior panel of this court affirmed defendant's conviction on appeal but modified the judgment to strike one of the sentencing enhancements imposed by the trial court.

### B.    *Defendant's Petition for Resentencing*

Defendant filed a section 1172.6 petition for resentencing in August 2022. The People opposed the petition and—emphasizing defendant's jury had not been instructed on the natural and probable consequences doctrine—argued defendant had been

convicted as a direct aider and abettor. In reply, defendant conceded his jury had not been instructed on the natural and probable consequences doctrine but he argued "he may nonetheless have been convicted on a theory under which malice was imputed to him based solely on his participation in a crime." Defendant contended the combination of the prosecution's closing argument and the kill zone instructions demonstrated he was prosecuted on a theory in which the People claimed he intended to kill his primary target, and his intent to kill the others was imputed by virtue of their location.

The trial court concluded defendant had not made a prima facie case of eligibility for resentencing and denied his section 1172.6 petition. The court found defendant "was the actual shooter and was not convicted under the natural and probable consequences [doctrine] or any theory that required that malice be imputed to him. [¶] Consequently[,] relief under . . . section [1172.6] is inapplicable here . . . ."

## II. DISCUSSION

Defendant's jury was not instructed on the natural and probable consequences doctrine. That is dispositive. As section 1172.6 provides and as persuasive precedent holds, section 1172.6 relief is only available for an attempted murder conviction if that conviction rests on the natural and probable consequences theory of aiding and abetting. (§ 1172.6, subd. (a) ["A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts when all of the following

4

conditions apply . . .”]; *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865; *People v. Coley* (2022) 77 Cal.App.5th 539, 548 [“Section [1172.6] applies by its terms only to attempted murders based on the natural and probable consequences doctrine. [Citation.] The jurors in this case were not instructed on that doctrine. . . . The court was not required to grant resentencing on this count”].)

Defendant seeks to avoid this straightforward result by arguing the combination of the kill zone instruction and the prosecutor's argument was the rough equivalent of permitting his conviction on a natural and probable consequences theory. Even if rough equivalence could satisfy the statutory language, the argument fails on its own terms; the natural and probable consequences doctrine and kill zone instructions and argument are not equivalent in any way that matters in this appeal. The kill zone theory does not impute or imply malice in the absence of a specific intent to kill (*People v. Jenkins* (2021) 70 Cal.App.5th 924, 931), and the kill zone theory is a theory of concurrent intent, not transferred intent (*People v. Mumin* (2023) 15 Cal.5th 176, 191).[2]

---

[2] Insofar as defendant argues he was convicted on a transferred intent theory, that is not a cognizable claim under section 1172.6. (*People v. Lopez* (2024) 99 Cal.App.5th 1242, 1249.) To the extent defendant argues there was some error at trial occasioned by the combination of the kill zone instruction and the prosecutor's argument, that argument also is not cognizable under section 1172.6. (*Lovejoy*, *supra*, 101 Cal.App.5th at 865; *Coley*, *supra*, 77 Cal.App.5th at 548; see also *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438 [section 1172.6 “does not permit a petitioner to establish eligibility on the basis of alleged trial error”].)

DISPOSITION

The trial court's order denying defendant's section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


HOFFSTADT, P. J.


KIM (D.), J.